UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,

vs.

D-1 KAMEL MOHAMMAD
RAMMAL (Cts.1-14), and

D-2 NASSIF SAMI
DAHER (Cts. 8, 10, 13-14),

                      Defendants.
_____/

Case:2:18-cr-20559
Judge: Edmunds, Nancy G.
MJ: Majzoub, Mona K.
Filed: 08-14-2018 At 02:32 PM
SEALED MATTER (NA)

Violations:
Ct. 1-14: 18 U.S.C. §§1343, 2
(Wire Fraud, Aiding and Abetting)

# INDICTMENT

**THE GRAND JURY CHARGES:**

**GENERAL ALLEGATIONS**

*That at all times pertinent to this indictment:*

1. The Supplemental Nutrition Assistance Program [SNAP], formerly known as the Food Stamp Program, was a federal welfare program funded by the United States Department of Agriculture [USDA] and, in Michigan, administered by the Michigan Department of Human Services [MDHS], formerly known as the Michigan Family Independence Agency;

2. The SNAP was created by statute and administered by regulation, and

was designed to provide economically disadvantaged persons, meeting specified eligibility criteria, with the funds to purchase essential food products for themselves and their families;

3. Recipients of SNAP benefits could use those benefits solely for the purchase of eligible food items, and the sale of such benefits for cash was strictly prohibited;

4. Recipients of SNAP benefits could use those benefits only at retail food stores which were formally authorized to participate in the SNAP [SNAP stores];

5. To become an SNAP store in Michigan, a store owner was required to complete, sign and submit an SNAP Application for Stores (FNS Form 252) to the USDA Food and Nutrition Services Division [FNS] showing that the store met eligibility requirements and containing an acknowledgment by the store owner that it was unlawful to trade cash for food stamp benefits and to accept benefits in exchange for anything but eligible food items;

6. The FNS 252 also contained an express promise that the applicant store owner would prevent violations of the SNAP rules and regulations such as trading cash for food stamp benefits, or accepting benefits from people not authorized to use them or for payment for ineligible items;

7. SNAP benefits recipients received Electronic Benefits Transfer [EBT] cards, commonly referred to as "Bridge Cards" due to a depiction of the Mackinaw Bridge on the face of the card, along with Personal Identification Numbers [PINs] from the MDHS which were used to make food purchases from participating merchants;

8. The MDHS authorized a specific monthly dollar amount of SNAP benefits to eligible recipients which could be accessed only with their EBT cards and PINs;

9. When authorized to participate in the SNAP, retail food stores received electronic terminals, known as "Point of Sale" [POS] terminals, from the FNS, which were required to process SNAP sales;

10. The purchase of eligible food items using SNAP benefits was accomplished in the following manner:

    A. The recipient would select authorized food items at an SNAP store and present them for purchase;

    B. The recipient's EBT card would then be scanned by the POS terminal which would read the magnetic strip on the EBT card containing the basic electronic information necessary to make the purchase;

    C. The SNAP recipient would enter the PIN into the POS terminal;

D. The POS terminal would then communicate electronically with a central database computer located outside of the State of Michigan by electronic transmission to determine whether sufficient benefits were available for the purchase;

E. The central database computer would then send the POS terminal, by wire, information that the purchase was authorized or denied based on the amount of benefits available;

F. If authorized, the central database would deduct the purchase price from the balance on the recipient's account and add a corresponding amount to the SNAP store's account;

G. The central database would calculate the cumulative SNAP benefit sales for each SNAP store on a daily basis and initiate electronic wire transfers of Department of Agriculture funds from the United States Treasury to the SNAP participating retail store's designated bank account to pay the SNAP store for SNAP purchases made that day;

11. In August 2007, D-1 KAMEL MOHAMMAD RAMMAL [RAMMAL] and another individual, whose initials are ZS, formed a Michigan corporation under the name K&M Petro to operate a gas station located at 9365 Van Dyke, Detroit, Michigan;

12. On or about December 10, 2007, K&M Petro applied to become an eligible SNAP retailer;

13. On or about December 17, 2007, RAMMAL received notification from the USDA that the application of K&M Petro to become an eligible SNAP retailer was denied because RAMMAL had been previously permanently disqualified from participating in the SNAP due to a prior finding that he was involved in exchanging cash for benefits at a different gas station;

14. In March 2008, S&R Petro, Inc. was incorporated in Michigan to operate a "Service Station & Mini Mart" at 9365 Van Dyke, Detroit, MI (the same location as K&M Petro) by the individual whose initials are ZS and RAMMAL's wife;

15. In September 2008, ZS purportedly bought RAMMAL's wife's share of S&R Petro, Inc., thereby becoming, nominally, the sole owner of S&R Petro;

16. In October 2008, S&R Petro applied to become an authorized SNAP retailer and also advised the USDA that ZS was the sole owner and would not permit any former owners of the disqualified business to have jobs at S&R Petro;

17. In fact, RAMMAL owned and managed S&R Petro, and had authority over the S&R Petro Comerica Bank account designated to receive SNAP proceeds for SNAP sales completed at S&R Petro;

18. In about August 2016, D-2 NASSIF SAMI DAHER [DAHER] began his

employment at S&R Petro;

## COUNTS ONE-FOURTEEN:
## WIRE FRAUD, AIDING AND ABETTING
## (18 U.S.C. §§1343, 2: Defendants Specified in Counts)

1. The *General Allegations* are included in this count;

2. Beginning sometime before March 2, 2016, and continuing through May 2017, in the Eastern District of Michigan, Southern Division, D-1 KAMEL MOHAMAD RAMMAL [RAMMAL] and D-2 NASSIF SAMI DAHER [DAHER], defendants, both directly and aiding and abetting one another, did, having devised a scheme to defraud and to obtain money from the USDA by means of false and fraudulent pretenses and representations, and for the purpose of executing that scheme, cause the transmission of writings, signs and signals by means of wire and radio transmission in interstate commerce;

3. The object of the scheme to defraud and to obtain money by false and fraudulent pretenses and representations was to obtain SNAP funds from the USDA by purchasing benefits from SNAP recipients for cash at a fraction of their value, usually about 50%, and then obtaining the full value of the benefits from the USDA by processing the transactions through S&R Petro's EBT terminal as though the beneficiary had purchased eligible food items with the benefits, a process known as "discounting." The SNAP beneficiaries were willing to accept

cash for their benefits at a highly discounted rate because it allowed them to use the benefits for any purpose, rather than being restricted to the purchase of eligible food items. The SNAP store engaged in discounting because it allowed the store to obtain money for nothing other than the use of its EBT terminal;

4. On or about the dates indicated below, in the Eastern District of Michigan, Southern Division, the defendants specified below did, for the purpose of executing the above-described scheme to defraud, cause the transmission of writings, signs and signals by means of wire and radio transmission in interstate commerce, specifically signals from Detroit, Michigan to Austin, Texas, each such transmission representing a separate count of this indictment:

| COUNT: | DATE: | DEFENDANTS: |
|---|---|---|
| One | March 2, 2016 | D-1 KAMEL MOHAMMAD RAMMAL |
| Two | April 6, 2016 | D-1 KAMEL MOHAMMAD RAMMAL |
| Three | May 31, 2016 | D-1 KAMEL MOHAMMAD RAMMAL |
| Four | June 21, 2016 | D-1 KAMEL MOHAMMAD RAMMAL |
| Five | August 12, 2016 | D-1 KAMEL MOHAMMAD RAMMAL |
| Six | September 14, 2016 | D-1 KAMEL MOHAMMAD RAMMAL |
| Seven | December 13, 2016 | D-1 KAMEL MOHAMMAD RAMMAL |
| Eight | December 20, 2016 | D-1 KAMEL MOHAMMAD RAMMAL<br>D-2 NASSIF DAHER |

| COUNT: | DATE: | DEFENDANTS: |
|---|---|---|
| Nine | February 24, 2017 | D-1 KAMEL MOHAMMAD RAMMAL |
| Ten | March 21, 2017 | D-1 KAMEL MOHAMMAD RAMMAL<br>D-2 NASSIF DAHER |
| Eleven | April 27, 2017 | D-1 KAMEL MOHAMMAD RAMMAL |
| Twelve | April 28, 2017 | D-1 KAMEL MOHAMMAD RAMMAL |
| Thirteen | May 28, 2017 | D-1 KAMEL MOHAMMAD RAMMAL<br>D-2 NASSIF DAHER |
| Fourteen | May 29, 2017 | D-1 KAMEL MOHAMMAD RAMMAL<br>D-2 NASSIF DAHER |

all in violation in Sections 1343 and 2 of Title 18 of the United States Code.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. §§ 982, 981 and 28 U.S.C. § 2461 – Criminal Forfeiture)

1.  Upon being convicted of violating Title 18, United States Code, Sections 1343 and 2 as charged in this Indictment, the convicted defendant(s) shall forfeit to the United States any property which constitutes, or is derived from, proceeds obtained directly or indirectly as a result of such violation(s), pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461, and/or Title 18, United States Code, Section 982(a)(2).

2.  <u>Money Judgment</u>: Upon being convicted of violating Title 18, United States Code, Sections 1343 and 2 as charged in this Indictment, the convicted

8

defendant(s) shall forfeit to the United States a sum of money equal to the amount representing the total amount of proceeds the convicted defendant obtained as a result of the violations charged in this Indictment.

      3.    <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant(s):

      (a)    Cannot be located upon the exercise of due diligence;

      (b)    Has been transferred or sold to, or deposited with, a third party;

      (c)    Has been placed beyond the jurisdiction of the Court;

      (d)    Has been substantially diminished in value; or

      (e)    Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461, to seek to forfeit any other property of defendant(s) up to the value of the forfeitable

property described above.

**THIS IS A TRUE BILL**

/s/ *Foreperson of the Grand Jury*
FOREPERSON OF THE GRAND JURY

MATTHEW SCHNEIDER
United States Attorney

/s/ JOHN K. NEAL
JOHN K. NEAL
Assistant United States Attorney
Chief, White Collar Crimes Unit

/s/ CATHLEEN CORKIN
CATHLEEN CORKIN
Assistant United States Attorney
Chief, National Security Unit

/s/ CRAIG A. WEIER
CRAIG A. WEIER (P33261)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-9678
craig.weier@usdoj.gov

August 14, 2018

| United States District Court<br>Eastern District of Michigan | Criminal Case C | Case: 2:18-cr-20559<br>Judge: Edmunds, Nancy G.<br>MJ: Majzoub, Mona K.<br>Filed: 08-14-2018 At 02:32 PM<br>SEALED MATTER (NA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: |

**Case Title:** USA v. Kamel Mohammad Rammal and Nassif Sami Daher

**County where offense occurred:** Wayne

**Check One:**  ☒ Felony    ☐ Misdemeanor    ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** _____ ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

August 14, 2018
Date

Craig A. Weier
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9678
Fax: (313) 226-2873
E-Mail address: Craig.Weier@usdoj.gov
Attorney Bar #: P33261

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/16